IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD A. JOHNSON
*Plaintiff*

v.

PNC BANK, N.A.
*Defendant.*

Civil Action No. ELH-19-3136

## MEMORANDUM OPINION

This case is rooted in an unfortunate incident of mistaken identification. Plaintiff Richard Johnson has sued defendant PNC Bank, N.A. ("PNC"), claiming that PNC falsely identified plaintiff to law enforcement as a person who had fraudulently negotiated a stolen check. ECF 2 (the "Complaint").[1] Asserting claims of negligence (Count I) and defamation (Count II), Johnson alleges that, as a PNC customer, PNC breached its fiduciary duty to him to protect his privacy and reputation and also defamed him. He seeks compensatory damages in an unspecified amount greater than $75,000.

Presently pending is PNC's motion to dismiss under Fed. R. Civ. P. 12(b)(6) (ECF 8), which is supported by a memorandum. ECF 8-1 (collectively, the "Motion"). Plaintiff opposes the Motion (ECF 9), and defendant has replied. ECF 12. The Motion is fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6.

For the reasons that follow, I shall grant the Motion.

---

[1] Suit was filed on October 3, 2019, in the Circuit Court for Carroll County. ECF 1 ("Notice of Removal"). PNC removed the action to this Court on the basis of diversity of citizenship jurisdiction under 28 U.S.C. §§ 1332, 1441.

# I.  Background[2]

PNC engages in retail banking.  It is a national banking association incorporated in Delaware and headquartered in Pittsburgh, Pennsylvania.  *See* PNC Financial Services Group, Inc., Annual Report  (Form 10-K), at 1 (Mar. 2, 2020).  In 2019, PNC had over 50,000 employees and 2,296 retail banking branches.  *Id.* at 34.

On or about October 3, 2018, Mr. Johnson visited a PNC retail branch located at 206 E. Ridgeville Boulevard in Mount Airy, Maryland (the "Mount Airy Branch").  ECF 2, ¶ 7.  While there, plaintiff presented his identification to a bank teller and cashed a check.  *Id.*  At approximately the same time, an unknown individual cashed a check that had been stolen earlier that day from a mailbox in Carroll County, Maryland.  *Id.* ¶ 8.

The mailbox theft was reported to law enforcement, and the case was assigned to United States Postal Inspector Dan Goolsby.  On October 12, 2019, Inspector Goolsby contacted the Mount Airy Branch.  *Id.* ¶ 9.  He explained that he was investigating a mail theft and that one of the stolen checks had cleared two days prior at the Mount Airy Branch.  *Id.*  Inspector Goolsby asked the Mount Airy Branch to furnish video surveillance footage for the period of time when the fraudulent check was negotiated.  *Id.*

In response, PNC's employees and agents, including Robert Smetzer, allegedly provided Inspector Goolsby with a "single photograph of Plaintiff from the video surveillance footage of bank transactions occurring on October 3, 2018."  *Id.* ¶ 10.  In so doing, PNC "falsely identif[ied] plaintiff as the person who fraudulently negotiated the check . . . ."  *Id.*

---

[2] Given the posture of the case, I shall assume the truth of the Complaint's allegations.  *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).  I may also take judicial notice of "'matters of public record'" and other information that "constitute 'adjudicative facts.'"  *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

In turn, Inspector Goolsby asked the Carroll County Sheriff's Office to post the photograph on its Facebook page in order to solicit information concerning the theft from the public. *Id.* ¶ 11. The Carroll County Sheriff complied, and a flyer containing the photograph was posted on Facebook on November 5, 2018. The caption above the image stated that "'***a check was fraudulently negotiated by the individual pictured below.***'" *Id.* (emphasis in original).

According to plaintiff, the flyer remained on the Carroll County Sheriff's Facebook page for 24 hours. *Id.* ¶ 12. During that time, it received "thousands of views and was even shared on Facebook by the victim of the mailbox theft." *Id.* ¶ 12. The image "was removed only after Plaintiff was forced to go through great time and effort to clear his name, including multiple phone calls, and his personal attendance at an embrace interview, during which he was treated as a criminal suspect." *Id.*

Plaintiff claims that he is "a prominent business and family man who grew up in Carroll County" and who "has worked his whole life to establish an excellent reputation." *Id.* ¶ 13. Further, plaintiff claims that as a result of defendant's "false accusation" he has experienced "loss of his standing and reputation in the community, shame, mortification, and mental anguish." *Id.* ¶ 14.

## II.     Standards of Review

### A.  Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by

a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of

relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long*

5

*Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009).   Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint.*'"   *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman*).

## B.  Choice of Law

The parties assume, without discussion, that Maryland law applies to this diversity case. When a federal court sits in diversity, it must "apply the forum state's substantive laws, including its choice of law rules." *Small v. WellDyne, Inc*., 927 F.3d 169, 173 n.3 (4th Cir. 2019); *Francis v. Allstate Ins. Co*., 709 F.3d 362, 369 (4th Cir. 2013); *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *Colgan Air, Inc. v. Raytheon Aircraft Co*., 507 F.3d 270, 275 (4th Cir. 2007).

Maryland is, of course, the forum state.  Under Maryland's choice-of-law principles for tort claims, Maryland applies the doctrine of *lex loci delicti*, *i.e.*, the law of the jurisdiction where the alleged wrong occurred.  *Lewis v. Waletzky*, 422 Md. 647, 657, 31 A.3d 123, 129 (2011); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 620, 925 A.2d 636, 648 (2007); *Kortobi v. Kass*, 182 Md. App. 424, 443, 957 A.2d 1128, 1139 (2008), *aff'd*, 410 Md. 168, 978 A.2d 247 (2009).

Plaintiff is a resident of Frederick County, Maryland. ECF 2, ¶ 1.  He alleges that he suffered reputational harm as a result of PNC providing his photograph to federal law enforcement, which in turn gave the photograph to the Carroll County Sheriff's Office, and that office, in turn, posted the image on a Facebook page.  ECF 2, ¶¶ 10-12, 14.  Therefore, it is readily apparent that the allegedly tortious conduct occurred in Maryland.

Moreover, all parties rely on Maryland law in their submissions. *See* ECF 8-1; ECF 9; ECF 12. In a case where the parties have not identified any state law conflicts, the court need not undertake a choice-of-law analysis. *See Cleaning Auth., Inc. v. Neubert*, 739 F. Supp. 2d 807, 820 (D. Md. 2010) ("'Choice-of-law analysis becomes necessary . . . only if the relevant laws of the different states lead to different outcomes.'") (citation omitted); *see also Vanderhoof-Forschner v. McSweegan*, 215 F.3d 1323 (Table) at *2 n.2 (4th Cir. 2000). Accordingly, I shall apply the substantive law of Maryland in assessing plaintiff's claims.

### III. Discussion

### A. Negligence (Count I)

PNC moves to dismiss plaintiff's negligence claim. ECF 8-1 at 4; ECF 12 at 2-6. According to defendant, the Complaint "alleges no facts that establish a fiduciary duty or any between Plaintiff and PNC that would obligate PNC to protect Plaintiff's privacy and reputation." ECF 8-1 at 4. Further, PNC asserts that "Maryland law does not recognize a claim for alleged negligent reporting to law enforcement." ECF 12 at 2.

To state a claim of negligence under Maryland law, the plaintiff must allege: (1) "the defendant owed a duty to the plaintiff based on an applicable standard of care"; (2) "breach of that duty"; (3) "causation that relates that breach to the plaintiff's injury"; and (4) "damages." *Armacost v. Davis*, 462 Md. 504, 526, 200 A.3d 859, 872 (2019); *see Hamilton v. Kirson*, 439 Md. 501, 523-24, 96 A. 3d 714, 727-28 (2014); *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212-13, 60 A.3d 1, 10 (2013); *Lloyd v. Gen'l Motors Corp.*, 397 Md. 108, 131-32, 916 A.2d 257, 270-71 (2007).

The existence of a duty, a legal obligation to a third person, is a threshold question because "'negligence is the breach of some duty that one person owes to another.'" *Jones v. State*, 425 Md.

1, 19, 38 A.3d 333, 343 (2012) (quoting *McNack v. State*, 398 Md. 378, 395, 920 A.2d 1097, 1106 (2007). Said a bit differently, where there is no duty, there is no negligence. *See Jones*, 425 Md. at 19, 38 A.3d at 343. Because this question "'is a matter of law to be determined by the court,'" it is "'an appropriate issue to be disposed of on motion for dismissal.'" *Pace v. State*, 425 Md. 145, 154, 38 A.3d 418, 423 (2012) (quoting *Bobo v. State*, 346 Md. 706, 716, 697 A.2d 1371, 1376 (1997)); *see Pendleton v. State*, 398 Md. 447, 461, 921 A.2d 196, 204 (2007) ("Whether a legal duty exists is a question of law, to be decided by the court.").

"A tort duty is 'an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.'" *Eisel v. Bd. of Educ. of Montgomery Cty.*, 324 Md. 376, 385-86, 597 A.2d 447, 452 (1991) (citation omitted); *see also Doe v. Pharmacia & Upjohn Co., Inc.*, 388 Md. 407, 415, 879 A.2d 1088, 1092-93 (2005) ("Duty is an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another."). In other words, "the determination of whether a duty exists represents a policy question of whether the plaintiff is entitled to protection from the defendant." *Doe*, 388 Md. at 415, 879 A.2d 1093.

"There is no set formula for the determination of whether a duty exists." *Id.* Instead, Maryland courts examine a "non-exhaustive list" of factors "for balancing the policy considerations inherent in the determination of whether a duty exists." *Id.* Those variables include

> the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost[,] and prevalence of insurance for the risk involved.

*Kennedy Krieger Inst., Inc. v. Partlow*, 460 Md. 607, 614, 191 A.3d 425, 429 (2018) (alteration in

original) (quoting *Kiriakos v. Phillips*, 448 Md. 440, 456, 139 A.3d 1006, 1016 (2016)); *see also Doe*, 388 Md. at 416, 879 A.2d at 1093; *Horridge v. St. Mary's Cty. Dep't of Soc. Servs.*, 382 Md. 170, 183, 854 A.2d 1232, 1238 (2004); *Ashburn v. Anne Arundel Cty.*, 306 Md. 617, 628, 510 A.2d 1078, 1083 (1986).

Notwithstanding the malleable character of tort duty, the Maryland Court of Appeals has instructed that, as a "general rule," an individual "'is under no special duty to protect another from . . . acts by a third person, in the absence of statutes, or of a special relationship.'" *Pace*, 425 Md. at 156, 38 A.3d at 424 (alteration in original) (quoting *Horridge*, 382 Md. at 183, 854 A.2d at 1239). This principle is well established in Maryland tort law. *See Warr v. JMGM Grp., LLC*, 433 Md. 170, 189-90, 70 A.3d 347, 358-59 (2013) (declining to recognize dram shop liability); *Barclay v. Briscoe*, 427 Md. 270, 295, 47 A.3d 560, 575 (2012) (employer was not liable to third party injured in a car accident caused by a tired employee); *Valentine v. On Target, Inc.*, 353 Md. 544, 551-52, 727 A.2d 947, 950-51 (1999) (estate of shooting victim could not hold gun store liable); *Ashburn*, 306 Md. at 628, 510 A.2d at 1083 (police officer owed no duty to third party injured by intoxicated motorist). A "special duty" to protect another from the acts of a third party can be created "'(1) by statute or rule; (2) by contractual or other private relationship; or (3) indirectly or impliedly by virtue of the relationship between the tortfeasor and a third party.'" *Remsburg v. Montgomery*, 376 Md. 568, 583-84, 831 A.2d 18, 27 (2003) (quoting *Bobo*, 346 Md. at 715, 697 A.2d at 1376).

Plaintiff's suit is entirely predicated on third-party harm. Mr. Johnson claims that, as a PNC customer, PNC had a duty to "protect his privacy and reputation . . . and to ensure that all potentially relevant information was properly transmitted to the postal inspector in a reasonable and professional manner." ECF 2, ¶ 18. PNC breached that duty, plaintiff contends, by providing

a single photograph to Inspector Goolsby, when it was "entirely foreseeable that [its] action . . . in response to a federal mail theft/criminal investigation, would lead to the exact harm that was caused upon Plaintiff." *Id.* ¶ 19.  But, the harms of which plaintiff complains—embarrassment and reputation loss—did not occur when PNC transmitted the photograph to Inspector Goolsby. Rather, they stem from the Carroll County Sheriff labelling plaintiff a criminal suspect in a Facebook post, which was viewed thousands of times over the course of 24 hours.  *See id.* ¶¶ 11-13.  Thus, it was the conduct of local law enforcement, not PNC, that directly caused plaintiff's alleged injuries.

Accordingly, in order to state a negligence claim, plaintiff must plausibly plead the existence of either a statute or a special relationship that imposes a duty on PNC to protect him from the acts of law enforcement.  Plaintiff has not done so.

Plaintiff identifies no statute or  regulation that creates such a duty.  The Complaint alleges the existence of a special relationship between PNC and Mr. Johnson—a "fiduciary duty."  *Id.* ¶ 18.[3]  But, banks do not owe a fiduciary duty to their customers under Maryland law "absent special circumstances."  *Polek v. J.P. Morgan Chase Bank, N.A*., 424 Md. 333, 366, 36 A.3d 399, 418 (2012).  And, Maryland courts "have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship . . . ."  *Parker v. Columbia Bank*, 91 Md. App. 346, 369, 604 A.2d 521, 532 (1992).  Indeed, it is a "long-standing principle of Maryland law"  that the relationship of a bank to its customer "is ordinarily a contractual relationship . . . and is not fiduciary in nature."  *Id.* at

---

[3] To be clear, plaintiff does not assert a free-standing breach of fiduciary duty claim, which Maryland does not recognize.  *See Kann v. Kann*, 344 Md. 689, 713, 690 A.2d 509, 521 (1997) ("[T]here is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries.").  Rather, plaintiff asserts that PNC was negligent in breaching its fiduciary duty to him.  *See id.* (noting that a breach of fiduciary duty can give rise to other claims).

368, 604 A.2d at 532; *accord Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 778 (4th Cir. 2013). Consequently, the Complaint does not plausibly allege that PNC had any duty to control the conduct of law enforcement or to protect plaintiff's privacy and reputation.

Brushing aside the absence of a statute or special relationship, plaintiff insists that "foreseeability alone" establishes the duty that PNC owed to him. ECF 9 at 7. But, as the Maryland Court of Appeals has explained, when the case concerns third-party harm, the "inquiry is not whether the harm was foreseeable, but, rather, whether the person or entity sued had control over the conduct of the third party who caused the harm by virtue of some special relationship." *Warr*, 433 Md. at 183, 70 A.3d at 355. Simply put, "regardless of any foreseeability, a duty does not exist to the general public, with respect to harm caused by a third party, absent the existence of a special relationship between the person sued and the injured party or the person sued and the third party." *Id.* at 184, 70 A.3d at 355.

Moreover, although the Maryland Court of Appeals has not squarely addressed whether a witness owes a duty of care to a criminal suspect when making an identification, the Maryland intermediate appellate court has expressly declined to acknowledge such a duty. In *Nolton v. Bejon, Inc.*, No. 0981, Sept. Term 2015, 2016 WL 4261743 (Md. Ct. Spec. App. Aug. 11, 2016), the defendant Erick McCoy was robbed at gunpoint while working at his family's gas station. *Id.* at *1. Nearly a month later, McCoy reported to the police that plaintiff, Terrence Nolton, was the robber. Nolton was arrested and indicted for robbery, but he was soon released and the charges were nolle prossed. *Id.* *2.

Thereafter, Nolton sued a host of defendants, asserting, *inter alia*, a claim of negligence against McCoy. The trial court granted summary judgment in favor of McCoy as to the negligence claim, and Nolton appealed, arguing that "'[w]hen a person proactively takes it upon himself to

deprive another person of his liberty by having him arrested, he owes that person a duty to exercise reasonable care in doing so.'" *Id.* at *6 (alteration in original). The Maryland Court of Special Appeals disagreed. *Id*. at *7. The court stated, *id.*: "In the case *sub judice*, Nolton has not cited to any Maryland case law, nor have we found any, that stands for the proposition that a witness who provides a positive identification of an alleged criminal to the police owes a duty to that alleged criminal." Thus, the court concluded that the trial court correctly granted summary judgment in favor of defendants on the negligence claim. *Id.*

Despite the different procedural posture, the facts and reasoning employed in *Nolton* make clear that PNC owed no duty to Mr. Johnson to prevent the events giving rise to this suit. Like Nolton, plaintiff alleges that PNC acted negligently in identifying him to law enforcement as the perpetrator of mail theft and fraud. And here too, Mr. Johnson has not located any Maryland case law that supports imposing a duty of care on PNC in making that identification. Therefore, in light of *Nolton*, I decline to recognize such a duty that would give rise to a new cause of action for negligent misidentification.

Significantly, *Nolton* is not an outlier. To the contrary, its holding is congruent with the general view that there is no cognizable action for negligent misidentification of a criminal suspect. *See Jones v. Autry*, 105 F. Supp. 3d 559, 561 (S.D. Miss. 2000) (collecting cases); *Morris v. T.D. Bank.*, 454 N.J. Super 203, 211-12, 185 A.3d 215, 220 (2018) (refusing to recognize claim against bank for wrongly identifying plaintiff as a bank robber). Indeed, the possibility of liability for providing information to law enforcement could significantly chill the willingness of individuals to volunteer information relevant to ongoing criminal investigations.

Accordingly, because plaintiff has not alleged that PNC owed him a duty of care, and *Nolton* forecloses the recognition of such a duty, I shall dismiss Count I, with prejudice.

## B. Defamation (Count II)

PNC moves to dismiss plaintiff's defamation claim, asserting that it "fails at every turn." ECF 8-1 at 5. In PNC's view, it did not make a statement because the "Complaint contains no allegations that PNC had any further participation in Inspector Goolsby's investigation beyond providing the requested surveillance." *Id.* Further, PNC contends that the Complaint's bald assertion that the photograph is false is implausible because plaintiff visited the Mount Airy Branch at the time specified by Inspector Goolsby. *Id.* at 6; ECF 12 at 6. And, PNC argues that plaintiff's defamation claim is barred by "absolute or qualified privilege applicable to statements made to law enforcement." ECF 8-1 at 7; ECF 12 at 6-8.

Under Maryland law, a defamatory statement "'is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person.'" *Norman v. Borison*, 418 Md. 630, 645 n.10, 17 A.3d 697, 705 n.10 (2011) (citation omitted). The tort of defamation consists of four elements: "'(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm.'" *Id.* (citations omitted). A statement is false if it was "'not substantially correct.'" *Piscatelli v. Van Smith*, 424 Md. 294, 306, 35 A.3d 1140, 1147 (2012) (quoting *Batson v. Shiflett*, 325 Md. 684, 726, 602 A.2d 1191, 1213 (1992)). The plaintiff bears the burden of establishing falsity. *Batson*, 325 Md. at 726, 602 A.2d at 1213.

"Maryland has retained the common law distinction between defamation *per quod* and defamation *per se*." *Sullivan v. City of Frederick*, JKB-17-1881, 2018 WL 337759, at *8 (D. Md. Jan. 9, 2018) (citing *Ind. Newspapers, Inc. v. Brodie*, 407 Md. 415, 441, 966 A.2d 432, 448 (2009)), *aff'd*, 738 F. App'x 198 (4th Cir. 2018). "Defamation *per se* is defamation on its face—*i.e.* the

'words themselves impute the defamatory character.'" *Sullivan*, 2018 WL 337759, at *8 (quoting *Metromedia, Inc. v. Hillman*, 285 Md. 161, 172, 400 A.2d 1117, 1123 (1979)). "In the case of defamation *per quod*, extrinsic facts must be alleged in the complaint to establish the defamatory character of the words or conduct." *Ind. Newspapers*, 407 Md. 415-42, 966 A.2d at 448.

Plaintiff alleges that PNC falsely accused him of committing a crime by providing Inspector Goolsby only with the photograph depicting him cashing a check. Thus, plaintiff frames his claim as one for defamation *per se*. *See Caldor, Inc. v. Bowden*, 330 Md. 632, 625 A.2d 959 (1993) (false accusation of theft against an employee constituted defamation *per se*); *Montgomery Ward & Co., Inc. v. Cliser*, 267 Md. 406, 298 A.2d 16 (1972) (false accusation of theft of merchandise against customer was slander *per se*); *Shulman v. Rosenberg*, No. 1683, Sept. Term 2016, 2017 WL 5172642, at *9 (Md. Ct. Spec. App. Nov. 8, 2017) ("We have previously found that words or statements constitute defamation per se when the meaning of the words impute to the plaintiff the commission of a crime.").

"Although a plaintiff need not plead a defamation claim under the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, the pleadings in a defamation case must still be sufficiently detailed to enable a defendant to appropriately respond." *Estate of Jones v. St. Thomas More Nursing & Rehab Ctr.*, PJM-09-1419, 2009 WL 3247929, at *3 (D. Md. Oct. 1, 2009); *see Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005) ("While the Federal Rules of Civil Procedure require more specific pleading in certain cases, defamation cases are not among them."). Consequently, a "plaintiff may not baldly allege a broad course of conduct over a lengthy period of time and later sue on any act that occurred during that time period." *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862, 1999 WL 89125, at *3 (4th Cir. 1999) (unpublished table decision). Moreover, every "alleged defamatory statement constitutes 'a

separate instance of defamation,' which 'a plaintiff must specifically allege.'" *Gainsburg v. Steben & Co.*, 838 F. Supp. 2d 339, 344 (D. Md. 2011) (quoting *English Boiler*, 1999 WL 89125, at *3); *see also Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 758 (D. Md. 2015) ("To satisfy federal pleading standards, a plaintiff must specifically allege each defamatory statement.").

As noted, PNC asserts that, assuming the transmission of the photograph to Inspector Goolsby qualifies as the publication of a false statement, that statement is entitled to absolute or qualified privilege. ECF 8-1 at 7-9; ECF 12 at 7-8. "'An absolute privilege is distinguished from a qualified privilege in that the former provides immunity regardless of the purpose or motive of the defendant, or the reasonableness of his conduct[.]'" *Smith v. Danielczyk*, 400 Md. 98, 117, 928 A.2d 795, 806 (2007) (citation omitted); *see Adams v. Peck*, 288 Md. 1, 3, 415 A.2d 292, 293 (1980); s*ee also Day v. Johns Hopkins Health Sys. Corp.*, 907 F.3d 766, 772 (4th Cir. 2018) ("'The witness had an absolute privilege [and] [t]he plaintiff could not recover even if the witness knew the statements were false and made them with malice.'") (quoting *Briscoe v. LaHue*, 460 U.S. 325, 330 (1983)).

Maryland extends absolute immunity to three categories of statements: (1) statements made in a judicial proceeding; (2) statements made in a quasi-judicial proceeding; and (3) statements made extrinsic to a judicial or quasi-judicial proceeding. *Norman*, 418 Md. at 650-56, 17 A.3d at 708-12. The extrinsic statements can be further divided into three categories, *id.* at 653, 17 A.3d at 710-11:

> (1) statements made with the direct purpose or effect of producing a judicial or quasi-judicial proceeding, *e.g.*, a police brutality complaint, (2) statements "prepared for *possible* use in connection with a pending judicial proceeding," *Adams*, 288 Md. at 4, 415 A.2d at 294 (emphasis added), but which remain unfiled at the time of the alleged injury, and (3) statements that are not designed necessarily to produce a proceeding or cause one to be "filed," but which are connected contextually to a pending or ongoing proceeding.

Notably, the court evaluates the context in which the statement was made, not the statement itself. So, to "say a letter or email was sent, or a conversation was had 'during the course of a proceeding' is to say the letter, email, or conversation had some general 'relevance,' relationship, or connection to that proceeding. The specific alleged defamatory statement contained therein, however, need not have a similar relevance." *Id.* at 658 n.17, 17 A.3d at 713 n.17.

In contrast, qualified privilege, also referred to as the "common interest" privilege, provides that a "'person ought to be shielded against civil liability for defamation where, in good faith, he publishes a statement in furtherance of his own legitimate interests, or those shared in common with the recipient or third parties . . . .'" *Doe*, 123 F. Supp. 3d at 758 (quoting *Gohari v. Darvish*, 363 Md. 42, 56, 767 A.2d 321, 328 (2001)); *see Lindenmuth v. McCreer,* 233 Md. App. 343, 358-59, 165 A.3d 544, 553 (2017). Thus, "communications may enjoy a qualified privilege, whether from a legal or moral duty to convey the information, or from a mutual interest of the communicator and recipient in the subject matter." *De Leon v. Saint Joseph Hosp., Inc.*, 871 F.2d 1229, 1237 (4th Cir. 1989) (discussing Maryland law). The *Darvish* Court explained, 363 Md. at 58, 767 A.2d at 328:

> Common interests are usually found among members of identifiable groups in which members share similar goals or values or cooperate in a single endeavor . . . . The idea is to promote free exchange of relevant information among those engaged in a common enterprise or activity and to permit them to make appropriate internal communications and share consultations without fear of suit . . . .

Generally, when a statement enjoys a qualified privilege, the privilege defeats an action for defamation. *See Shapiro v. Massengill*, 105 Md. App. 743, 778, 661 A.2d 202, 220 (1995). However, the qualified privilege can be overcome or defeated if the plaintiff demonstrates that the statement was made with "malice." *Piscatelli*, 424 Md. at 307-08, 35 A.3d at 1148; *see Seley-Radtke v. Hosmane*, 450 Md. 468, 474, 149 A.3d 573, 577 (2016); *Smith*, 400 Md. at 117, 928

16

A.2d at 806 (noting that qualified privilege is "'conditioned upon the absence of malice and is forfeited if it is abused'") (citation omitted). A publisher acts with malice if he has "'actual knowledge that his [or her] statement is false, coupled with his [or her] intent to deceive another by means of that statement.'" *Piscatelli*, 424 Md. at 307-08, 35 A.3d at 1148 (alterations in original) (citation omitted). And, a plaintiff may also defeat a qualified privilege by showing "that the defendant did not make the statement 'in furtherance of the interest for which the privilege exists.'" *Lindenmuth*, 233 Md. App. at 362-363, 165 A.3d at 556 (quoting *Happy 40, Inc. v. Miller*, 63 Md. App. 24, 33, 491 A.2d, 1210, 1214 (1985)).

Maryland courts have applied absolute privilege to statements that serve to initiate a judicial proceeding, such as attorney misconduct grievances, *Kerpelman v. Bricker*, 23 Md. App. 628, 630, 329 A.2d 423, 425 (1974), or police brutality complaints, *Miner v. Novotny*, 304 Md. 164, 177, 498 A.2d 269, 277 (1985). And, as PNC points out, other courts have held that statements made to law enforcement officers in furtherance of an investigation are entitled to absolute privilege. *See* ECF 8-1 at 8 (collecting cases). But, PNC cites to no Maryland case, and the Court's research has not uncovered one, applying absolute privilege to statements made during the course of a criminal investigation prior to the initiation of proceedings.

The case of *Smith v. Danielczyk*, 400 Md. 98, 928 A.2d 795 (2007), suggests that qualified privilege as opposed to absolute privilege applies to the case *sub judice*. In *Smith*, the plaintiffs, two Baltimore City Police officers, filed a defamation suit against two other officers, alleging that the defendants included defamatory statements in a search warrant application to investigate the plaintiffs for possession of controlled substances. *Id.* at 105-08, 928 A.2d at 800-01. The Maryland Court of Appeals found that the "crux of th[e] case [was] whether appellees enjoyed either an absolute or qualified privilege to make the statements they made in their application for

the search warrant . . . ." *Id.* at 116, 928 A.2d at 806.  The defendants posited that the statements were entitled to absolute privilege because a warrant application is part of the judicial process.  *Id.*  In contrast, the plaintiffs asserted that the warrant is not part of a judicial proceeding and thus is not absolutely privileged.  *Id.*

The court agreed with the plaintiffs.  *Id.* at 128, 928 A.2d at 813.  It observed that "unlike the kinds of statements to which we have accorded an absolute privilege, an application for search warrant, at least in the ordinary case, is not made in the course of an existing judicial proceeding and does not inaugurate or necessarily lead to one." *Id.* at 125, 928 A.2d at 811.  Rather, a warrant application is "several steps removed from a judicial proceeding." *Id.*  Further militating against finding the statements protected by absolute privilege was the fact that "the presentation of a search warrant application is almost always *ex parte*," and so there is "little or no ability to test the accuracy of the affiant's averments." *Id.*  Thus, given the lack of "procedural safeguards that will minimize defamatory statements," the court reasoned that the "the presentation of an application for search warrant may be more akin to an investigatory proceeding" and therefore only warranted qualified privilege.  *Id.* at 126, 128, 928 A.2d at 811, 813.

*Smith* teaches that, assuming that PNC made a false publication by providing Inspector Goolsby with plaintiff's photograph, PNC's statement is, at a minimum, entitled to qualified privilege.  Like a warrant application, statements made to law enforcement in the course of a criminal investigation do not, themselves, trigger judicial proceedings.  Rather, both often occur far upstream of an indictment.  Moreover, statements made to law enforcement, such as identifying a suspect, are not made in an adversarial setting in which the defamed individual has the opportunity to challenge the veracity of the statements.

It follows then that PNC is immune from plaintiff's defamation claim unless plaintiff has plausibly alleged that PNC acted with malice. *Piscatelli*, 424 Md. at 307-08, 35 A.3d at 1148; *see Smith*, 400 Md. at 117, 928 A.2d at 806. "'While the question of whether a defamatory communication enjoys a conditional privilege is one of law for the court, whether it has been forfeited by malice is usually a question for the jury.'" *Darvish*, 363 Md. at 54, 767 A.2d at 327 (citation omitted). That said, the issue of malice "need not be submitted to the fact-finder when the plaintiff fails to allege or prove facts that would support a finding of malice." *Piscatelli*, 424 Md. at 308, 35 A.3d at 1148.

Here, the Complaint is devoid of any factual allegations from which to plausibly infer that PNC acted with malice by providing Inspector Goolsby with plaintiff's image. The Complaint alleges that that, on October 3, 2018, plaintiff cashed a check at the Mount Airy Branch at "approximately the same time" as an unknown individual fraudulently cashed a stolen check. ECF 2, ¶ 8. Then, on October 12, 2018, Inspector Goolsby contacted the Mount Airy Branch, "explained that he was conducting an investigation into a mail theft," and "asked [PNC] to provide video surveillance footage recorded at the time that the fraudulent check was negotiated." *Id.* ¶ 9. In response, PNC provided Inspector Goolsby "a single photograph of Plaintiff from the video surveillance footage of bank transactions occurring on October 3, 2018." *Id.* ¶ 10. None of these allegations supports the inference that PNC had "actual knowledge" that the photograph misidentified plaintiff as the criminal suspect *and* that PNC acted with the "intent to deceive" Inspector Goolsby. *Piscatelli*, 424 Md. at 307, 35 A.3d at 1148 (citation omitted).

The Maryland Court of Appeals has instructed that "[a]ll relevant circumstances are admissible when determining whether a defendant abused a common law defamation privilege, 'including the defendant's reasonable belief in the truth of his statements, the excessive nature of

the language used, whether the disclosures were unsolicited, and whether the communication was made in a proper manner and only to proper parties.'" *Id.* at 308, 35 A.3d at 1148 (quoting *Orrison v. Vance*, 262 Md. 285, 295, 277 A.2d 573, 578 (1971)).

But, taking each factor in turn, there are no allegations that PNC believed the image was misleading or was unreasonable in its belief that plaintiff was the individual who cashed the stolen check. PNC's alleged statement—the photograph—cannot be said to be "excessive." Indeed, PNC left the task of identifying the perpetrator to law enforcement. The disclosure was not unsolicited; PNC provided the image at the request of Inspector Goolsby. And, PNC only transmitted the photograph to law enforcement; it did not circulate the photo itself, such as by posting it on the Mount Airy Branch's Facebook page. In sum, the totality of circumstances cuts decisively against finding that PNC abused its qualified privilege.

Plaintiff posits that the question of whether PNC abused its privilege is for a jury to decide because he has plausibly alleged that PNC acted with a reckless disregard for the truth. ECF 9 at 12. That is so, plaintiff avers, because PNC was "the only entity with access to the video surveillance and photographs of the fraudulent transaction" but only provided Inspector Goolsby with the "single image of Plaintiff, essentially communicating to Inspector Goolsby that Plaintiff was the perpetrator of fraudulent activity." *Id.* However, "malice" in the defamation context does not encompass recklessness.

It is true that the Maryland Court of Appeals once defined malice as "knowledge of falsity or reckless disregard for truth." *Marchesi v. Franchino*, 283 Md. 131, 139, 387 A.2d 1129, 1133 (1978). But, that standard was superseded in *Piscatelli*, 424 Md. at 307-08, 35 A.3d at 1148, where the Maryland Court of Appeals explained that qualified privilege is defeated only by malice, which it defined as "a person's actual knowledge that his [or her] statement is false, coupled with his [or

her] intent to deceive another by means of that statement." *See Shirley v. Heckman*, 214 Md. App. 34, 45-46, 75 A.3d 421, 427-28 (2013) (tracing the evolution of malice and rejecting plaintiff's contention that reckless disregard for truth can defeat qualified privilege); *see also Montgomery Cty. v. Fones*, No. 1026, Sept. Term 2017, 2019 WL 1222949, at *16 n.15 (Md. Ct. Spec. App. Mar. 14, 2019) (refusing to find that reckless disregard for the truth can amount to malice). Thus, to the extent that plaintiff alleges that PNC acted recklessly, those allegations cannot defeat qualified privilege.

In sum, given that PNC is entitled to qualified immunity and the Complaint does not adequately allege that PNC acted with malice, Count II warrants dismissal, without prejudice.

### IV. Conclusion

For the foregoing reasons, I shall grant the Motion (ECF 8).

An Order follows.


Date: March 27, 2020                    _____/s/_____
                                         Ellen L. Hollander
                                         United States District Judge